### J. H. WEBB v. STATE.

No. A-4022.    Opinion Filed Jan. 16, 1923.
(211 Pac. 524.)

(Syllabus.)

**Intoxicating Liquors—Evidence Insufficient to Sustain a Conviction for Maintaining Nuisance.**—The evidence held insufficient to support a verdict of guilty for maintaining a nuisance by keeping a place where intoxicating liquors were sold.

Appeal from County Court, Oklahoma County; W. R. Taylor, Judge.

J. H. Webb was convicted of maintaining a liquor nuisance, and he appeals. Reversed.

Ross N. Lillard, for plaintiff in error.

Geo. F. Short, Atty Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. J. H. Webb, plaintiff in error, was jointly informed against with Joe Henderson and Hazel Webb, charged with keeping and maintaining a nuisance where whisky, beer, and wine were manufactured, sold, bartered, and given away to numerous and divers persons unknown. Joe Henderson was not arrested. J. H. Webb and Hazel Webb were put upon trial on March 3, 1921, and by a verdict of the jury Hazel Webb was found not guilty, and J. H. Webb was found guilty as charged, and his punishment was

fixed at a fine of $100 and confinement in the county jail for a period of 30 days. From the judgment rendered on the verdict he appeals.

The record shows that J. H. Webb and Hazel Webb, his wife, had leased certain property at 2949 West Tenth street in Oklahoma City; that after taking this lease they lived there for some weeks, and then subleased the premises to Joe Henderson, a portion of the furniture and other belongings owned by Webb and his wife being left on the premises with Henderson; that on several occasions they returned to the place to look after some hogs and chickens which they had left there, and to collect the rent. At the time of the arrest Webb and his wife had gone to the place for that purpose, and found that the place had been searched by officers and was under guard. On that morning, between the hours of 2 and 4 o'clock, the county attorney and two peace officers had gone to the house and forced an entrance, and had searched the house and basement, finding nothing out of the ordinary. They then went to the servants' house at the rear of the main dwelling, where they found nine barrels of mash, some sweet and some sour, and an apparatus known as a still. The still was in a knock-down condition, and not in operation. No one was in the house or the servants' quarters at the time of the search. The county attorney had returned to his office before Webb and his wife arrived at the premises, at about 11 o'clock on that morning. John Heep, one of the officers, testified, in part, as follows:

"Q. Did you have any conversation with these defendants? A. Yes, sir.

"Q. Can you tell the jury what the conversation was about? A. It was about the stuff we found there.

"Q. What did they say about it? A. They claimed it wasn't theirs.

"Q. Whose did they say it was? A. Henderson's."

There was no direct evidence on the part of any witness tending to show that any intoxicating liquor was found on the premises, or that whisky or other intoxicating liquor had been or was being sold at the place.

Hazel Webb testified that she and her husband had sub-rented these premises to Joe Henderson and his wife; that the premises were rented furnished with their belongings, and that she and her husband moved out, and Henderson and his wife moved in; that from time to time they returned to the premises to see about their belongings and to collect rent; that on the 18th day of November they went to the premises for that purpose; that when they arrived at the place they found the door had been broken in, and that Luther Bishop, drew a gun on her husband; that she became frightened and started to leave; that she had no personal belongings in the washhouse, where the mash was found, and did not know the still and mash were there. The testimony of J. H. Webb was of like import.

There are 11 assignments of error set out in the petition in error; the first being that the verdict is not sustained by the evidence. The Attorney General has confessed error upon this ground. An examination of the record convinces us that the confession of error is well founded, making it unnecessary to analyze the other assignments of error.

The judgment of the trial court is therefore reversed.

MATSON, P. J., and DOYLE, J., concur.