## G. A. (BUCK) WILSON v. STATE.

No. A-7631.   Opinion Filed Feb. 7, 1931.
(296 Pac. 517.)

John T. Levergood, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, hereinafter referred to as the defendant, was charged by information with maintaining a public nuisance, by unlawfully, willfully, and knowingly keeping malt, spirituous and fermented liquors, capable of being used as a beverage, and containing more than one-half of 1 per cent. alcohol measured by volume, to wit, beer and whisky, were received, kept, and possessed by him to sell, barter, give away, and otherwise furnish such liquors to others in violation of law; was convicted and sentenced to serve 90 days in the county jail and pay a fine of $500 and costs taxed at $37.50. From the judgment defendant has appealed.

The testimony on behalf of the state shows that Roy F. Lewis filed an affidavit with J. H. Dutton, county judge, asking that a search warrant issue to search the property of the defendant. In the affidavit made by Roy F. Lewis, the defendant is charged with making whisky, possessing whisky, beer, ale, and wine, and imitations thereof and substitutes therefor, which contained as much as one-half of 1 per cent. of alcohol capable of being used as a beverage; the defendant has spirituous, vinous, fermented malt liquors, including whisky, beer, ale, and wine; that the defendant is guilty of operating, conducting, carrying on, dealing, playing at poker, roulette, craps, banking, and percentage games, and gambling devices in which chance is, and becomes, a material element, for money, checks, credits, property, and representatives of value, in violation of the laws of the state of Oklahoma; and the premises described which are asked to be searched bear the general reputation of being a place where intoxicating liquor, to wit: beer, whisky, ale, and wine are had, possessed, kept, and received for the purpose of sale, and are sold; that persons congregate there; that they leave there and carry bottles; they have been seen drinking from bottles which when cast aside bear the odor of intoxicating liquor, to wit, alcohol and whisky; that different individuals have been seen on said premises drinking from said bottles and immediately after drinking have been seen to stagger from intoxication and heard to talk in a thick-toned manner; that said place is frequented by habitual drunkards, and constitutes a public nuisance.

Based upon the affidavit filed by the affiant Lewis, containing the allegations herein set out, a search warrant was issued and the officers went to the defendant's place and searched the same, and as shown by the evidence, they found a bottle containing a small quantity of whisky

in the plant of the defendant, and a short distance from the building, in a wood pile, they found a half gallon of whisky in two different jars. Motion to suppress the evidence was filed and overruled, and exceptions saved.

The state called J. A. Guilliams, who testified he lived at Tecumseh, and was a deputy sheriff—

"I went with some other officers to the Wilson Pipe Company building about 8:30 or 9 o'clock at night; we had a search warrant and served the same upon the defendant who was in the door of the building, or near it when we arrived; there was no one there at the time except the defendant; I found a small white jar of whisky; Frank Stewart found a small bottle in the building and Tandy Moore found a red jar of whisky; the two jars of whisky were found outside the building in a wood pile some 15 or 20 feet from the building; we found something like five or six empty jars around or near the building, and some small bottles."

On cross-examination witness stated:

"I found a small bottle in the north part of the building; I suppose it is the office; hidden under some sacks or something of the kind; there is no fence around the building; the building is immediately back of the Santa Fe, and the Rock Island is immediately back of it; the building is about 200 feet from the oil mill; there was an automobile left the plant just before we went to it; do not know who it was."

The witness stated he did not know how many men were working at the defendant's plant; they were making tiles for road purposes, large and small, and concrete building blocks.

Tandy Moore called as a witness, in substance, stated:

"I was with Joe Guilliams on the night of September 11, 1929, when they searched the Wilson Pipe Company building; found a half gallon of whisky; it was a little

northeast of the pipe company's building, probably not 20 feet; it was under some wood; the defendant was at the building that night; when we first went there he was standing at the door."

The witness was asked as to the general reputation of the Wilson Pipe Company's building on the 1st of August, 1929, up until about the 11th of September, 1929, for being a place where intoxicating liquors were kept and where people congregated for the purpose of drinking such liquor, and he stated he knew the general reputation, and it was bad.

On cross-examination he stated he did not know how many people the defendant worked at his pipe company—

"I never knew about any whisky found there prior to this night; there is no fence around the building that I know of."

Marion Pettigrew also testified he was a deputy sheriff on the 11th day of September, 1929, and was with the other officers when they went to the building belonging to the defendant, and that the reputation of the building in the community at the time as a place where people congregated for the purpose of drinking intoxicating liquor and become drunk was bad.

"I have seen people go there in the evening and observed the condition of some of them as they came away; I would say they were drunk, not too drunk, feeling pretty good; I live about a block away from the building." On cross-examination witness stated he had not observed the condition of the parties before they went into the building; "some time they would go there in automobiles, and some times walking; I did not keep an account of how many went or how many came away; I could not say definitely how many I saw coming away from there who appeared to be in a drunken condition; I did not see any one take a drink in the building."

Frank Stewart testified he was on the raid with the officers when they made the search of the defendant's building—

"When we searched we found a bottle in the building and two jars outside the building; the defendant's place is not a residence; there is an office, and a place where they make pipe; the reputation of the place for people to congregate and resort for the purpose of drinking is bad."

On cross-examination he stated he was with the parties when they made the search, and, in substance, testified the same as the other witnesses as to what they found, and where it was found.

Grover C. Butler testified that the defendant operated the Wilson Pipe Company; the reputation of the place was bad for being a place where people congregated for the purpose of drinking whisky. On redirect examination the witness Butler testified this is the first time he ever knew of the Wilson place being searched; he went down there one time with Dr. Gray to get his boy; the boy was drunk when they found him.

The defendant testified in his own behalf and stated:

"I am the owner of the pipe line company where the search was made; my business was located at Tecumseh, down near the oil mill; I was working as high as eight or ten men at the time; I manufacture sewer pipe, water meter boxes, concrete building blocks, and specialties in concrete; have been in the business 24 years; I never saw any of the exhibits here before; if any of these were found in my building I did not know anything about them. On the night of the 9th Dr. Gray's son came down to my building; I think he rode down there in a car; when he came he was apparently well lit up."

On cross-examination defendant stated:

"I may have taken a drink that evening; I did not drink out of any of the bottles here in court; if I took a drink I took it before I came to the shop that evening; I had been at the shop about one hour before I was arrested; Dr. Gray came down and took his son from the building; Dr. Gray did not notify me that the officers were coming and I did not put the whisky out in the wood pile; I had not had several people around there drinking on previous occasions; I had not had lots of drunk men down there during the months of August and September, 1929; they did not get drunk at my place of business to my knowledge; I never saw any whisky around my place of business during the months of August and September, 1929; my place had been searched before, but they did not find any whisky at my place that I know of; the business is run by myself, I am the manager; lots of days I am not in the plant during the day; I did not see the officers take the whisky out of my place, nor did I see them take any whisky out of the wood pile; I have seen men around my place of business who looked like they were intoxicated; we did not go down every evening, nor did they get drunk down there; I never heard of the officers arresting any one down at my place of business for being drunk; I was not arrested at my place of business for being drunk; I pleaded guilty and paid a fine for drunkenness up town. On the previous search mentioned by Mr. Lewis they did not find any whisky on the premises, nor was there any charge filed against me. All the laborers have access to the building as well as myself; the men go in and out any time it is open; I have not been there all the time. Casper Davis and Andy Robinson work for me; Robinson is the foreman. I have had two or three other people working there, and my boys worked down there the biggest part of the summer."

This is, in substance, the testimony.

The defendant has assigned ten errors alleged to have been committed by the court in the trial of this case. The first assignment of the defendant is that the court erred

in overruling his motion to suppress the evidence, on the ground that the same was obtained by illegal and unreasonable search of this defendant's private residence on the 8th day of September, 1929. The affidavit in this case charges almost every crime known to our criminal statutes. It is positive in form and subscribed and sworn to by Roy F. Lewis on the 10th day of September, 1929. After this affidavit was sworn to, the affiant Lewis seems to have passed out of the picture as a witness or complainant in the case, as he is not called to give evidence, and there is nothing to show that he had any knowledge of any of the acts stated in the affidavit.

The affidavit for the search warrant being positive in form, this court cannot inquire into the truth or falsity of the statements contained in the affidavit, but we are constrained to the opinion that the affidavit containing the allegations it does contained many statements that were not within the knowledge of the affiant, and such statements as the affiant should not make unless he did know the facts about which he was swearing. Under the previous holdings of this court the motion to suppress the testimony was properly overruled, as the statements in the affidavit were positive statements.

It is next urged by the defendant that the court erred in overruling his motion for a new trial. The defendant in this case was by information charged with the crime of a public nuisance, under what is generally termed our prohibitory statutes. Section 7870, C. O. S. 1921, defines a "nuisance." Section 7871, C. O. S. 1921, is a follows:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

That part of section 7022, material to the issues in this case, is as follows:

"All places where any sprituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; or any malt liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; is manufactured, sold, bartered, given away or otherwise furnished in violation of any provision of this act; and all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances."

Ruling Case Law, vol. 20, page 380, § 1, defines a "nuisance" as follows:

"The term 'nuisance' is derived, it appears, from the French word 'nuire,' which means to injure, hurt or harm. And in a broad sense it is true that a nuisance is anything that works an injury, harm or prejudice to an individual or the public. According to the definition given by Blackstone (3 Black. Com. 216) which has met with general approval, a nuisance is anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. A more comprehensive definition, however, must be adopted in order to include everything that is recognized by the law as a nuisance at the present day. The decisions establish that the term nuisance, in legal parlance, extends to everything that endangers life or health; gives offense to senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property."

It will be seen by the definition of the statute and Ruling Case Law, of a "public nuisance," under which

the defendant in this case was prosecuted, that it is necessary before the defendant can be legally convicted that the proof on behalf of the state should show that the defendant manufactured, sold, bartered, gave away, possessed, or otherwise furnished, in violation of our statute, vinous, fermented, malt liquors, or imitations thereof or substitutes therefor, or mixtures or compounds of any kind or description whatsoever, containing more than one-half of 1 per cent. alcohol, measured by volume, and capable of being used as a beverage; or the state must show by proof that persons congregated or resorted to the place of business of the defendant for the purpose of drinking such liquor, before the state could sustain a conviction.

There is no testimony in this case which tends to show that the defendant manufactured, sold, bartered, gave away, or otherwise furnished, in violation of the provisions of the statute, any spirituous, vinous, fermented, or malt liquor, or any compounds or substitutes therefor. The testimony on behalf of the state fails to show any drinking in or around the plant of the defendant. One of the state's witnesses testified that some time during the day, and prior to the time, the search was made, he had gone down with Dr. Gray to defendant's place of business, and got a son of Dr. Gray's, and that the son was intoxicated, or appeared to be intoxicated.

The defendant in his testimony says that the young man was intoxicated when he came to his place of business, and that he did not drink anything at his place, so far as he knew. Some other testimony of an indefinite character was introduced by the state, tending to show that people went to and away from the place of business who appeared to be under the influence of intoxicating liquor. The place of business of the defendant was a manufacturing plant, where any one desiring to go might

go in at any time during the day when the plant was open, and the defendant had no control over their going and returning from his place of business.

The testimony fails to show what hours in the day or night it is claimed by the state that parties were seen coming and going to and from the place of business. The proof shows that it was not a store, shop, boarding house, or place of business other than a manufacturing plant, and, as stated in the testimony, it was along the right of way of the Rock Island and Sante Fe railroads. There is no testimony tending to show that on any occasion the defendant had sold, bartered, or given away any intoxicating liquor at his plant, or that he had ever been seen in possession of any. The testimony fails to show that the two jars of whisky found a short distance outside of the plant was the property of the defendant, or that the defendant owned the wood pile it is claimed the two jars were found in.

The testimony of the state shows that a small quantity of whisky, estimated at something like a half pint, found somewhere in the defendant's building under some old sacks or some material, belonged to the defendant.

The question then to be determined is, Is the proof sufficient under the law to sustain a conviction of maintaining a public nuisance?

The only testimony as to the reputation of the place is the testimony of the officers, and they do not testify to any specific facts which would tend to show the defendant's place to be a place where whisky, wines, beer, or compositions were kept, sold, given away, or otherwise furnished to others, nor does the proof show that anything was done to the annoyance, detriment, or injury to the health of any individual surrounding it. Officers of the

law are supposed to do their duty, and they are not supposed to furnish proof sufficient to convict a defendant, unless they know the facts about which they testify. If the reputation of the defendant's place of business was such as to amount to a nuisance under the prohibitory laws, certainly some individual other than the officers could have been called to testify as to the general reputation of his place and plant. Reputation is what the people generally say about a person or place, and in proving that reputation, if those living near enough to know what the reputation is have talked about it, or mentioned it, it would seem that some of them should have been called to so testify.

This court has repeatedly held that, where the defendant is charged with keeping and maintaining a place where intoxicating liquor is sold or illegally disposed of, it is competent for the state to prove the general reputation of such place in said community touching this matter. Reputation alone is not sufficient to sustain a conviction of maintaining a public nuisance in the absence of competent testimony that such place is a place where intoxicating liquors were sold, or sales of such liquors were made on the premises. In this case there is a total failure of proof as to any sale of any prohibitory liquors on the premises of the defendant, or that the defendant's place of business was a place where people assemble or congregate for the purpose of drinking. We do not understand that the finding of a small quantity of whisky in the plant of the defendant on one single occasion is sufficient to support a nuisance conviction, in the absence of proof of the sale of such liquor having been made on the premises. The statute against unlawful possession is intended to cover such instances, and that is the statute upon which prosecution should be based, where the state

is unable to supply the additional elements of proof necessary to support a nuisance conviction. Webb v. State, 22 Okla. Cr. 390, 211 Pac. 524; Jones v. State, 23 Okla. Cr. 9, 211 Pac. 1075.

There are other errors assigned, but the view we take of this record it is not necessary to consider them. The evidence is insufficient to sustain a conviction of maintaining a public nuisance.

The judgment is reversed.

EDWARDS, J., concurs.

CHAPPELL, J., dissents.